**GREEN MOUNTAIN INVESTMENT CORP. d/b/a Palmiter Realty Group v. Edward A. FLAIM v. Paul James and Brian Palmiter**

[807 A.2d 461]

No. 01-238

August 15, 2002. Defendant Edward Flaim appeals a superior court judgment in favor of Palmiter Realty Group, Paul James and Brian Palmiter on his counterclaims and third-party claims for breach of fiduciary duty and promissory estoppel. Flaim contends that: (1) the trial court erroneously declined to instruct the jury on his claims for breach of fiduciary duty; (2) he is entitled to damages in the amount of $10,000 on those claims as a matter of law; and (3) the trial court improperly reserved, and then decided as a matter of law against him, the issue of whether equity required the enforcement of the promise forming the

496

basis of his claim for promissory estoppel. We affirm.

In December 1999, Flaim entered into two separate open listing agreements with Palmiter Realty Group and Deerfield Valley Realty. The terms of the listing agreements were identical and provided that the realtor would earn a 5% commission upon the presentation of a full price, no contingency offer that would close in a reasonable time, whether or not a sale was made. Flaim received an offer through Deerfield that satisfied the open listing agreement on March 29, 2000. Paul James, a broker at Palmiter Realty, called Flaim the next day and informed him that he was developing a higher offer. Flaim told James that it was too late for another offer and that James's proposed offer was not high enough to make a difference. That night, Flaim composed a letter stating his intention to accept the Deerfield offer and thereby terminate his listing with Palmiter Realty.[1]

On March 31, Flaim met with James and expressed his intention to terminate the listing by accepting the Deerfield offer. James encouraged Flaim to reject the Deerfield offer and list exclusively with Palmiter to avoid paying a double commission. According to James, a clause in the open listing agreement shielded Flaim from a double commission by terminating all other outstanding open listings when he upgraded to an exclusive listing agreement with one broker. Skeptical of the clause, Flaim insisted on a hold harmless agreement under which Palmiter Realty would assume liability for the Deerfield commission. James assured Flaim that Palmiter Realty would hold him harmless and would sign

an agreement to that effect. Later that day, Palmiter Realty submitted a higher offer that satisfied the requirements of the open listing agreement. The hold harmless agreement had not been signed at that point. Both Deerfield and Palmiter sought their commissions from Flaim. Flaim did not accept either offer, nor did he accept the higher than asking price follow-up offers through both Deerfield and Palmiter.

Palmiter Realty then commenced this action against Flaim for breach of contract. Flaim responded by asserting breach of fiduciary duty as an affirmative defense and counterclaim. He also brought a third-party breach of fiduciary duty claim against James and Brian Palmiter individually for exposing him to a dual commission. During the jury trial, Flaim, without objection, amended his response to include promissory estoppel claims against Palmiter Realty. Later, the court ruled on its own motion that there was no evidentiary basis for the breach of fiduciary duty counterclaims and third-party claims.

The jury returned a special verdict, finding that James had knowledge of the Deerfield offer before submitting a competing offer and that James took insufficient precautions to obtain Flaim's informed consent before subjecting him to multiple commissions. Accordingly, the jury denied Palmiter Realty recovery of its commission. The jury also determined that James had promised to hold Flaim harmless if Flaim accepted the Palmiter offer and Deerfield subsequently sued for its commission. The jury found that James's hold harmless promise induced Flaim to reject the Deerfield offer. The superior court declined to award Flaim compensation for the payment of the Deerfield commission, however, reasoning that justice did not require the performance of the promise to hold harmless. In reaching this conclusion, the court noted that Flaim could have accepted either offer and paid only one

---

[1] The open listing agreement did not allow for unilateral termination by the seller. Only acceptance of another offer could terminate the open listing agreement.

commission by either (1) enforcing the hold harmless agreement by taking the Palmiter offer, or (2) accepting the Deerfield offer and raising the same defenses against Palmiter that the jury accepted in its special verdict.

On appeal, Flaim argues that the court erroneously failed to charge the jury with his breach of fiduciary duty counter- and third-party claims, noting that they rest on the same evidentiary basis as his successful breach of fiduciary duty affirmative defense.

The court must charge the jury with all legal theories raised in the pleadings and by the introduction of evidence. *Arnold v. Cantini*, 154 Vt. 142, 145, 573 A.2d 1193, 1195 (1990). However, those pleadings and evidence must support a prima facie case. *Seewaldt v. Mount Snow, Ltd.*, 150 Vt. 238, 240, 552 A.2d 1201, 1202 (1988). The breach of the agent's duty must be the cause of the principal's third-party liability. Restatement (Second) of Agency § 401 cmt. a (1958). A principal may recover "for losses" attributable to an agent's breach of fiduciary duty. *Carr v. Peerless Ins. Co.*, 168 Vt. 465, 475, 724 A.2d 454, 460 (1998) (citing Restatement (Second) of Agency § 399(a), (b)). Therefore, to recover third-party losses for a breach of fiduciary duty, a plaintiff must show (1) the existence of an agency relationship, and (2) a breach of the agent's duty that caused a liability to a third party.

Although the jury found some elements of breach of fiduciary duty arising out of James's conduct sufficient to deny collection of the Palmiter commission, the record does not support the claim that the breach resulted in Flaim's liability for the Deerfield commission. Since the obligation to pay the commission arose as soon as Deerfield presented a conforming offer, prior to James's conduct, the trial court correctly declined to instruct on breach of fiduciary duty as a third-party and counterclaim. James's breach of fiduciary duty had no effect on Flaim's pre-existing responsibility for the Deerfield commission.[2] *Vineyard Brands, Inc. v. Oak Knoll Cellar*, 155 Vt. 473, 486, 587 A.2d 77, 84 (1990) (where no damages can be recovered for breach of fiduciary duty claim, the trial court may refuse to instruct jury on that theory).

Flaim also contends that the court erred in reserving, and denying as a matter of law, the award of damages on his claim of promissory estoppel. Establishment of promissory estoppel requires (1) a promise on which the promisor reasonably expects the promisee to take action or forbearance of a substantial character; (2) the promise induced a definite and substantial action or forbearance; and (3) injustice can be avoided only through the enforcement of the promise. *Overlock v. Cent. Vt. Pub. Serv. Corp.*, 126 Vt. 549, 552, 237 A.2d 356, 358-59 (1967). The determination of "whether injustice can be avoided only by the enforcement of the promise" is a question of law, however. *Tour Costa Rica v. Country Walkers, Inc.*, 171 Vt. 116, 123, 758 A.2d 795, 801 (2000); see also *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992) (question of whether promise must be enforced to avoid injustice is a legal question for the court); *City of Powell v. Busboom*, 44 P.3d 63, 66 (Wyo. 2002) (first two elements of promissory

---

[2] Although neither party raises the issue, the court's exclusion of the breach of fiduciary duty counter- and third-party claims from the jury instruction are alternately supportable as a sua sponte grant of a directed verdict. V.R.C.P. 50(a)(1) (the court may grant a motion for judgment as a matter of law after a party has been heard on the issue and before its submission to the jury if no evidence supports a reasonable jury finding for that party on the issue); see *Harris v. Carbonneau*, 165 Vt. 433, 439, 685 A.2d 296, 300 (1996) (dismissal as a matter of law of claims not supported by evidence).

498

estoppel are for the finder of fact, while the third is a matter of law for the court). We discern no error in the trial court's decision.

Although the jury returned a special verdict that satisfied the first two elements of promissory estoppel, the trial court properly determined that equity did not require the enforcement of the promise as the only way to avoid injustice. The court found that Flaim contributed to his exposure to multiple commissions by initiating a "bidding war" and accepting neither offer. Furthermore, consistent with the jury's special verdict, the court found that the hold harmless agreement was intended to induce Flaim not only to reject the Deerfield offer, but also to accept the Palmiter offer, which he did not do. Finally, the court noted that his use of the agreement to solicit higher bids was not contemplated by the terms of the agreement. Cf. *Tour Costa Rica*, 171 Vt. at 123, 758 A.2d at 801-02 (enumerating factors to consider in determining whether injustice can only be avoided by the enforcement of a promise, including character of the action or forbearance in relation to remedy sought and the extent to which the action or forbearance was foreseen by the promisor). Strict enforcement was not, therefore, necessary to avoid injustice. Consequently, we decline to reverse the court's decision not to enforce the promise to hold harmless.

*Affirmed.*